UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br><br> V. <br><br> DARRIAN WYNELL TOMLIN, <br>     Defendant. | CRIMINAL ACTION NO. 5:13-90-KKC <br><br> **MEMORANDUM OPINION & ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Darrian Tomlin's motion to suppress evidence seized pursuant to a search warrant (DE 182) and motion to suppress evidence seized incident to arrest (DE 183). For the following reasons, the Court will deny both motions.

**I. Motion to Suppress Evidence Seized Pursuant to a Search Warrant**

In his first motion, Tomlin moves the Court to suppress evidence seized pursuant to a search warrant. (DE 182). He argues that the affidavit supporting the search warrant did not establish probable cause, and that the officer's reliance on the warrant was not objectively reasonable. Because this motion challenges a finding of probable cause, no hearing is required and the Court considers only the four corners of the underlying affidavit. *United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013).

Where an affidavit is challenged on the basis that there was no probable cause, the court reviews the affidavit to determine whether the issuing judge "had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would

be found at the place cited." *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1999)). Probable cause exists "when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Id.* at 479 (quoting *Davidson*, 936 F.2d at 859). Importantly, a state-court judge's probable-cause determination is entitled to "great deference," *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006), and courts consider the totality of the circumstances when making the decision, rather than engaging in "line-by-line scrutiny" of an affidavit. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

In his affidavit, Detective Jared Curtsinger of the Lexington Police Department stated that he "believes that evidence of narcotics use, possession, or trafficking will be found upon the immediate search of the property located at 2089 Old Paris Road, Lexington, Kentucky." (DE 182-3). This belief was based on the following information contained in the affidavit:

- On April 10, 2013, Curtsinger conducted a controlled purchase of oxycodone where the pill supplier was an individual named Sharon Stidham. The following day, on April 11, 2013, Curtsinger confronted Stidham and discovered she possessed approximately twenty-one oxycodone pills at the time. Stidham confessed that she provided the pills in the drug transaction from the previous day and began cooperating with Curtsinger.

- Stidham informed Curtsinger that her oxycodone suppliers were two individuals from Detroit, Michigan going by the name of "Solo" and "T," and that she believed Solo's last name was "Tomlin." These individuals, according to Stidham, lived in her same building at 2089 Old Paris Road, Lexington, Kentucky.

- Stidham explained that she had been receiving large quantities of oxycodone on a weekly basis since November of 2012. After the transaction on April 10, Stidham took the money she received to 2089 Old Paris Road and gave it to Tomlin. Stidham then described three additional times she had been to the apartment to obtain oxycodone pills from both T and Tomlin within the last week.

- Curtsinger found a photo of Tomlin and showed it to Stidham, who confirmed it was the individual she knew as Solo. Curtsinger then conducted some follow-up

investigation and found where Tomlin was from in Michigan, and discovered that Tomlin was convicted of a drug trafficking charge in Fayette County, Kentucky in 2008.

Tomlin contends that the affidavit did not establish probable cause because Stidham was not a known and reliable criminal informant at the time, and Curtsinger did not obtain any additional evidence to corroborate her description of criminal activity. But corroborating evidence is not always necessary to establish probable cause, even when a criminal informant is being used for the first time. "Statements from a source named in a warrant application . . . are generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability." *United States v. Hodge*, 714 F.3d 380, 384–85 (6th Cir. 2013). "[N]amed informants, unlike confidential informants, require little corroboration." *United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008). In this case, Curtsinger relied on a *named* informant, rather than one who remained anonymous or confidential, which mitigates against the fact that she had no history of providing reliable information.

Furthermore, Curtsinger stated in his affidavit that Stidham informed him she had been in the residence to pick up oxycodone and deliver cash within the last twenty-four hours, and at least two other times within the past week. "When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence." *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986). In fact, "there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime than [the named informant's] direct viewing of" the contraband in the residence that is the target of the search. *Id.*

3

Finally, Curtsinger's affidavit does contain additional information to corroborate some of Stidham's statements. After informing Curtsinger that her suppliers were from Detroit and she believed one of them had the last name of "Tomlin," Curtsinger was able to find a photo of Tomlin matching the description Stidham gave. And although Tomlin was from Detroit, Curtsinger discovered he had been convicted of a drug trafficking charge in Fayette County, Kentucky in 2008. While this additional information might not be the strongest corroboration, the Court views it in conjunction with the fact that Stidham was a named criminal informant who provided first-hand accounts of drug trafficking occurring inside the residence on multiple occasions immediately before completing the affidavit. Taken together, the totality of the circumstances clearly presented a substantial basis for the state-court judge to find probable cause sufficient to issue a search warrant. Accordingly, the Court will deny Tomlin's motion.

## II. Motion to Suppress Evidence Seized Incident to Arrest

Tomlin's second motion to suppress (DE 183) focuses on the evidence obtained from a backpack that Curtsinger searched while arresting him. In his motion, Tomlin argues that the warrantless search of the backpack violated the Fourth Amendment as it did not meet the requirements to be considered a lawful search incident to arrest.

Detective Curtsinger arrested Tomlin pursuant to an arrest warrant at 1479 Townley Drive in Lexington, Kentucky. During the course of his arrest, Tomlin was handcuffed and placed face down. Two other individuals were inside of the residence, one of whom was also handcuffed and another who remained unconstrained. Although Curtsinger was alone inside of the house for most of the arrest, two other officers were outside the residence. The backpack at issue in Tomlin's motion was sitting on the floor next to Tomlin when he was

arrested. Curtsinger searched the backpack after handcuffing Tomlin, and did so in order to ensure that neither Tomlin nor the other individuals could access anything dangerous that might be concealed inside. Tomlin claims that the backpack and its contents do not belong to him, but that Curtsinger's warrantless search of the backpack did not fall within the search-incident-to-arrest exception and therefore violated his Fourth Amendment rights.

When evaluating whether a search was unconstitutional, "the crucial inquiry is 'whether governmental officials violated any legitimate expectation of privacy held by the [defendant].'" *United States v. Tolbert*, 692 F.2d 1041, 1044 (6th Cir. 1982) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 106 (1980)). Courts use a two-part test to determine whether a defendant has a legitimate expectation of privacy, where they evaluate (1) whether the individual has "exhibited an actual (subjective) expectation of privacy," and (2) whether that "subjective expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Id*. (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)). Crucially, defendants have standing to challenge the legality of a search only when it is their own Fourth Amendment rights—their own personal expectations of privacy—that were violated. *See United States v. Peters*, 194 F.3d 692, 696 (6th Cir. 1999). That is, the exclusionary rule cannot be used to suppress evidence obtained in violation of a third-party's rights.

Here, Tomlin consistently maintains that the backpack containing the contraband does not belong to him. This fact proves fatal to his Fourth Amendment challenge. "[O]ne who disclaims any interest in [the searched property] thereby disclaims any concern about whether or not the contents of the [property] remain private." *Peters*, 194 F.3d at 696 (quoting *Tolbert*, 692 F.2d at 1045)). Tomlin cannot claim that he has a subjective expectation of privacy in the backpack while simultaneously disclaiming its ownership. He

5

has no legitimate expectation of privacy over the contents of a backpack he claims he does not own. *See id.*

Alternatively, Tomlin argues that if he "has no standing to contest the search of the backpack without admitting possession, then there is clearly nothing to connect the backpack or its contents to [him], and it would be overly prejudicial to introduce it and its contents against him." (DE 183-1, at 2–3). This argument, however, relies on a mistaken understanding of the Fourth Amendment's standing rules. Tomlin lacks standing because he denies ownership of the backpack. The issue of standing is unrelated to whether there is evidence connecting the backpack or its contents to him. *See Peters*, 194 F.3d at 695–96. Tomlin's disclaimer defeats standing because he cannot assert a subjective expectation of privacy in a backpack that he simultaneously claims he does not own. *See id* at 696. Thus, Tomlin lacks standing even if the United States intends to prove the backpack belongs to him because it is his denial of ownership that causes Tomlin to lose standing, regardless of whether he actually owns the backpack. Moreover, whether Tomlin owns the backpack is a distinct question from whether he owns its contents. It is perfectly plausible for the United States to contend that Tomlin does not have a legitimate expectation of privacy over the backpack, but that he owns the oxycodone and cash found inside.

To this end, the contents of the backpack are clearly relevant to the charges against Tomlin. Tomlin is charged with conspiring to distribute oxycodone, and the backpack—which was found in close proximity to Tomlin when he was arrested—contained 600 oxycodone pills and a large sum of cash. Further, the United States submits that text messages were obtained via a search warrant indicating that Tomlin intended to sell 600 oxycodone pills—the same number found inside the backpack—to co-defendant Eva Lee.

(DE 193, at 2). The evidence, therefore, is clearly relevant to the charges against Tomlin regardless of whether he has a legitimate expectation of privacy in the backpack.

* * *

Accordingly, and for the above-stated reasons, **IT IS ORDERED** that

1. Tomlin's motion to suppress evidence seized pursuant to the search warrant (DE 182) is **DENIED**; and

2. Tomlin's motion to suppress evidence seized incident to his arrest or in the alternative to exclude in limine (DE 183) is **DENIED**.

Dated this 27th day of January, 2014.

*[signature]*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY